IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE: )
)
CENTER FOR ADVANCED )
MANUFACTURING & TECHNOLOGY, )
a/k/a CAMTECH, )
)
    Appellee, )
) Civil Action No. 05-329 Erie
)
) Bankruptcy No. 03-12940
    v. )
)
WRIGHTCO TECHNOLOGIES, INC., )
)
    Appellant. )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J.

    This matter is before the Court upon Appellant Wrightco Technologies' ("Wrightco") motion for leave to appeal an interlocutory order entered by Bankruptcy Judge Warren W. Bentz in the above captioned adversary proceeding. The Bankruptcy Judge's order, dated October 19, 2005, denied Wrightco's motion to dismiss the underlying bankruptcy case. For the reasons set forth below, we deny Wrightco's motion for leave to appeal the Bankruptcy Judge's interlocutory order denying the motion to dismiss.

### I. BACKGROUND

    On December 2, 2003, the Debtor filed a voluntary Chapter 11 bankruptcy petition in the above referenced bankruptcy case. On August 2, 2004, the Debtor filed a plan of reorganization ("the Plan") and a disclosure statement. On October 14, 2004, the Plan was confirmed by the Bankruptcy Court. Specifically included within the Plan was a provision allowing the Debtor to pursue post-confirmation causes of action, as contemplated by Section 1123(b) of the Bankruptcy

1

Code,[1] by having the "Debtor's attorney . . . file appropriate complaints in the Bankruptcy Court or other court of appropriate jurisdiction . . . on behalf of the Estate."

On June 10, 2005, the Debtor filed a complaint in the above captioned adversary proceeding and asserted the following causes of action (collectively, "the Causes of Action") against Wrightco:

> Count I - Turnover (11 U.S.C. § 542(a))
>
> Count II - Breach of Contract (11 U.S.C. § 544(b))
>
> Count III - Fraudulent Transfer (11 U.S.C. § 548 (a) & (b))
>
> Count IV - Fraudulent Transfer (11 U.S.C. § 544(b) & 12 Pa.C.S.A. § 5105)
>
> Count V - Fraudulent Transfer (11 U.S.C. § 544(b) & 12 Pa.C.S.A. § 5104(a)(1))
>
> Count VI - Fraudulent Transfer (11 U.S.C. § 544(b) & 12 Pa.C.S.A. § 5104(a)(2))

On July 15, 2005, Wrightco filed a motion to dismiss the complaint and alleged, *inter alia*, that the Bankruptcy Court lacked standing to adjudicate the adversary proceeding because only a trustee may bring an avoidance action under §§ 542, 544, and 547-50. Wrightco relied upon the United States Supreme Court's decision in <u>Hartford Underwriters Insurance Co. v. Union Planters Bank</u>, 530 U.S. 1 (2000), which held that, in the context of 11 U.S.C. § 506, the language "the trustee may" means that a trustee has exclusive standing to pursue recovery under § 506(c). On October 19, 2005, the Bankruptcy Judge denied Wrightco's motion, holding that "the interpretation of 'the trustee may' in § 506(c) does not apply to other sections of the bankruptcy code."

---

[1]  Sect ion 1123(b) provides in relevant part:

> (b) Subject to subsection (a) of this section, a plan may -
> \*    \*    \*    \*    \*    \*
> (3) provide for –
> (A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or
> (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest . . .

11 U.S.C. § 1123(b).

## II. STANDARD OF REVIEW

District courts are vested with jurisdiction to hear appeals from bankruptcy courts pursuant to 28 U.S.C. § 158. Section 158(a)'s grant of jurisdiction over appeals from interlocutory bankruptcy court orders is left to the discretion of the district court. Because the statute offers no standard as to how a district court should exercise its discretion in granting interlocutory appeals, courts have uniformly turned to analogous statute, 28 U.S.C. § 1292(b), for guidance. Section 1292(b) requires consideration of the following three factors in determining whether to grant an interlocutory appeal:

(1)   whether the order involves a controlling question of law;

(2)   whether there is substantial ground for a difference of opinion on the controlling question of law; and

(3)   whether immediate appeal would materially advance the termination of the litigation.

28 U.S.C. § 1292(b).

## III. DISCUSSION

It is undisputed that this motion for interlocutory appeal involves a controlling issue of law. "An order involves a controlling issue of law if, on appeal, a determination that the decision contained error would lead to reversal." Doward v. Consolidated Rail Corp., 505 F.Supp. 58, 59 (E.D. Pa. 1980). Here, the controlling issue of law is whether the Debtor, CAMTech, has standing to assert the Causes of Action set forth in the complaint. Additionally, it is readily apparent that immediate appeal would materially advance the termination of the litigation, as a reversal of the Bankruptcy Judge's order denying the motion to dismiss would result in the dismissal of the underlying adversary proceeding. Thus, we focus our analysis on whether "there is a substantial ground for a difference of opinion on the controlling question of law." 28 U.S.C. § 1292(b).

For there to be "substantial grounds for difference of opinion" on an issue, it must involve more than strong disagreement between the adversaries. Rather, the requisite difference of opinion exists only where the issue is difficult and is of first impression. See, e.g., Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 25 (2nd Cir. 1990). For the reasons stated below, we conclude that there is no substantial ground for difference of opinion on the issue presented herein.

In Hartford Underwriters, the Supreme Court held that the operative phrase "the trustee may,"

3

under the avoidance power promulgated under § 506, is to be construed as a limitation on the party who may exercise such avoidance power:

> [T]he statute appears quite plain in specifying who may use § 506(c)-"[t]he trustee." It is true, however, as petitioner notes, that all this actually "says" is that the trustee may seek recovery under the section, not that others may not. The question thus becomes whether it is a proper inference that the trustee is the only party empowered to invoke the provision. We have little difficulty answering yes.

Id. at 6. Wrightco argues that, because the phrase "the trustee may" also appears in each section of the bankruptcy code upon which CAMTech based its Causes of Action, to wit, §§ 542, 544 and 548, the Hartford Underwriters decision similarly limits the ability of a non-trustee to bring an avoidance action under those sections. Because the debtor, CAMTech, is not a trustee, Wrightco concludes that the holding of Hartford Underwriters mandates dismissal of the underlying avoidance proceeding for lack of standing. We disagree.

First, we note, as did the Bankruptcy Judge, that the holding in Hartford Underwriters is legally distinguishable from the instant action. The Hartford Underwriters Court expressly limited its holding to independent actions brought under § 506:

> We do not address whether a bankruptcy court can allow other interested parties to act in the trustee's stead in pursuing recovery under § 506(c). Amici American Insurance Association and National Union Fire Insurance Co. draw our attention to the practice of some courts of allowing creditors or creditors' committees a derivative right to bring avoidance actions when the trustee refuses to do so, even though the applicable Code provisions, see 11 U.S.C. §§ 544, 545, 547(b), 548(a), 549(a), mention only the trustee. See, e.g., In re Gibson Group, Inc., 66 F.3d 1436, 1438 (C.A.6 1995). Whatever the validity of that practice, it has no analogous application here, since petitioner did not ask the trustee to pursue payment under § 506(c) and did not seek permission from the Bankruptcy Court to take such action in the trustee's stead. Petitioner asserted an independent right to use § 506(c), which is what we reject today. Cf. In re Xonics Photochemical, Inc., 841 F.2d 198, 202-203 (C.A.7 1988) (holding that creditor had no right to bring avoidance action independently, but noting that it might have been able to seek to bring derivative suit).

Id. at 13 n. 5. The Third Circuit has declined to extend this ruling beyond the context of § 506(c). See Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery ("Cybergenics II"), 330 F.3d 548, 558 (3d Cir.2003) (en banc) (holding that Hartford Underwriters does not prevent a

4

creditor's committee from bringing an avoidance action under § 544(b)). Despite the Supreme Court's reservation in footnote five and the Third Circuit's opinion in Cryogenics II, Wrightco advocates a reading of Hartford Underwriters that would put an end to derivative standing actions:

> The Court:   Your reading of Hartford would ring the death knell for derivative standing cases, wouldn't it?
>
> Mr. Skiba:   A good chance.
>
> The Court:   Well, not a good chance, it would, wouldn't it?
>
> Mr. Skiba:   I believe it would.
>
> The Court:   Notwithstanding the fact that there's a specific section of the Code, Section 1109, that contemplates that type of action, correct?
>
> Mr. Skiba:   Yes.

(Transcript of Hearing on Motion for Leave to Appeal Interlocutory Order ("Transcript"), January 13, 2006, p. 4).

We disagree with the trustee's expansive reading of Hartford Underwriters. Although derivative standing was not sought in this case, CAMTech's attempt to bring a post-confirmation avoidance action is analogous because the mechanics for doing so appear in the Plan documents and were approved by the Bankruptcy Court:

> Mr. Skiba:   [T]his not a derivative standing case.
>
> The Court:   It's not, but functionally this case is coming on, as I understand it, that the plan documents authorized the plaintiff here to take this action. The plan documents would have had to [have] been approved by the Bankruptcy Court. So in some form or fashion the Bankruptcy Court, just like in a derivative standing situation, gave its imprimatur to this potentiality, did it not?
>
> Mr. Skiba:   Yes.

(Transcript, p. 6). Several Courts have concluded that Hartford Underwriters is distinguishable in such circumstances. See, e.g., Cybergenics II, 330 F.3d at 580 (holding that bankruptcy courts have the equitable power to authorize creditors' committees to sue derivatively to avoid fraudulent transfers for the benefit of the estate); In re Railworks Corp., 325 B.R. 709, 723 (Bankr. D.Md. 2005) (holding that Hartford Underwriters does not prevent a representative of the estate from bringing a

5

post-confirmation avoidance action in accordance with a confirmed plan); In re J. Allen Steel Co., 323 B.R. 425, 432-34 (Bankr. W.D.Pa. 2005), *vacated on other grounds*, 2005 WL 3695753 (W.D.Pa. Dec 12, 2005) (distinguishing Hartford Underwriters and concluding that the unsecured creditors' committee could pursue avoidance actions assigned to it by the debtor under a confirmed plan); In re Together Development Corp., 262 B.R. 586, 593 (Bankr. D.Mass. 2001) (holding that Hartford Underwriters did not apply where the debtor stipulated that the creditors' committee could pursue avoidance actions).

Moreover, Hartford Underwriters is also distinguishable on its facts. In Hartford Underwriters, debtor Hen House Interstate, Inc. obtained workers' compensation insurance from petitioner Hartford Underwriters as part of its Chapter 11 reorganization strategy. Although Hen House repeatedly failed to pay its monthly premiums, Hartford, which knew nothing of Hen House's bankruptcy, continued to provide insurance. When the reorganization attempt fell through, Hen House converted its case to a Chapter 7 liquidation and a trustee was appointed. Hartford, alerted to the bankruptcy, sought to recover approximately $50,000 in overdue premiums from the bankruptcy estate but found it almost entirely without unencumbered assets. In other words, Hartford was a singular entity acting both unilaterally and exclusively for its own benefit:

> The petitioner in Hartford Underwriters was an insurer who, by continuing coverage despite Hen House's failure to pay its premiums, became an administrative lender with claims subordinate to those of the secured creditors. When it learned of Hen House's bankruptcy, it attempted to use § 506(c) to recover the premiums it was owed, but it did so in a strikingly unilateral fashion. The insurance premiums were not costs incurred by the trustee that, if recovered, would have yielded a common benefit. Instead, they would have satisfied only Hartford's outstanding claim. Nor did Hartford seek the court's or the trustee's permission to recoup the expense, but rather it sued in its own name and for its own direct benefit.

Cybergenics II, 330 F.3d at 558. The significance of this factual distinction was noted at oral argument:

> The Court:   [W]ouldn't you agree that the Hartford case is quite unlike this case factually?
>
> Mr. Skiba:   Yes.

6

> The Court:   In this sense. That you had a singularly interested entity, Hartford, out for its own piece of the pie and it -- as a matter of fact, I think the Third Circuit in Cybergenics used some pejorative term [that] smacked of the fact that they were off purely on their own mission.

(Transcript, p. 7). See also Cybergenics II, 330 F.3d at 559 ("This difference in contexts is crucially important, for while the question in Hartford Underwriters was one of a *nontrustee's right* unilaterally to circumvent the Code's remedial scheme, the issue before us today concerns a *bankruptcy court's equitable power* to craft a remedy when the Code's envisioned scheme breaks down.") (emphasis in original).

Although Wrightco correctly notes that each of the above-cited cases distinguishing Hartford Underwriters involved actions brought by a creditors' committee, rather than by the debtor, we find that the facts in this case are more analogous to those cases than to the "strikingly unilateral" actions of the creditor in Hartford. Here, the debtor is pursuing the Causes of Action in accordance with the clear terms of a confirmed bankruptcy plan, approved by the Bankruptcy Court, and under the jurisdiction of the Bankruptcy Court. Within that context, the Bankruptcy Court correctly concluded that "the Supreme Court's Hartford Underwriters decision is not an impediment to the Debtor's action . . . because the Debtor [is] appropriately seek[ing] to enforce the Causes of Action that it retained under the Plan." (Memorandum Opinion and Order, Dkt. #1, Ex. 4, p.5). We find no substantial ground for difference of opinion as to this conclusion.

## IV. CONCLUSION

For the reasons state above, we conclude that Wrightco has failed to demonstrate a substantial ground for difference of opinion as to the questions of law involved in the Bankruptcy Judge's October 19, 2005 opinion. Accordingly, Wrightco's motion for leave to appeal interlocutory order is **DENIED**. This action is **DISMISSED**.

An appropriate Order follows.

| | |
|---|---|
| IN RE: )<br>)<br>CENTER FOR ADVANCED )<br>MANUFACTURING & TECHNOLOGY, )<br>a/k/a CAMTECH, )<br>)<br>    Appellee, )<br>)<br>)<br>    v. )<br>)<br>WRIGHTCO TECHNOLOGIES, INC., )<br>)<br>    Appellant. ) | Civil Action No. 05-329 Erie<br><br>Bankruptcy No. 03-12940 |

## **O R D E R**

AND NOW, this 13th day of February, 2006, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Wrightco's motion for leave to appeal interlocutory order is **DENIED**. This action is **DISMISSED**.

                                                                                           /s/ Sean J. McLaughlin
                                                                                           United States District Judge

cm: All counsel of record.___